UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

———

MARCUS MAYS,

                Plaintiff,                    Case No. 2:11-cv-222

v.                                         Honorable R. Allan Edgar

DOUG GILL et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.

The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation

Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any

prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a

claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such

relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro*

*se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504

U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure

to state a claim against Defendants Lt. Perry, Captain Perry, Smith, Tribley, Jondreau, Capello,

Mackie, Green, Burke, Marshall, Sweeney and CMS.  The Court will serve the complaint against

Defendants Gill, Charles, Redinger, Carpenter, Hoover, Haatava, Wise, and Hill.

**Discussion**

I.      Factual allegations

Plaintiff Marcus D. Mays presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Marquette Branch prison, though the actions about which he complains occurred while he was housed at the Baraga Maximum Correctional Facility (AMF). Plaintiff sues Correctional Medical Services, Inc. (CMS) and the following AMF officials:  Resident Unit Officers (RUOs) Doug Gill, (unknown) Charles, M. Redinger, and (unknown) Carpenter; Sergeant Brian Hoover; Inspector C. Smith; Nurses Janet Haatava and Zeda Wise; Medical Supervisor Gloria Hill; Warden Gary Capello; Assistant Deputy Wardens (ADWs) Linda Tribley and William Jondreau; Hearing Investigator Julie Green; Resident Unit Manager (RUM) (unknown) Marshall; Assistant RUMs (ARUMs) B. Sweeney and (unknown) Mackie; second-shift Captain (unknown) Perry; second-shift lieutenants (unknown) Perry and another unknown party.

According to the complaint, Plaintiff was transferred to AMF on November 11, 2008. He alleges that, on December 1, 2008, Defendant Gill intentionally placed Plaintiff's wrists in handcuffs that were too tight.  When Plaintiff complained, Gill began twisting Plaintiff's arms, causing pain.  Defendant Redinger allegedly conspired with Gill by assisting Gill with the handcuffs and telling Plaintiff to "shut the fuck up."  As Plaintiff was being removed for a routine cell shakedown, Defendant Charles came to the cell and slammed Plaintiff head-first into the floor. Charles then kneed Plaintiff in the chest.  Defendant Redinger thereafter called Plaintiff a "Nigger" and slammed Plaintiff to the floor, punching and kicking him.  Plaintiff alleges that both Defendant Carpenter and Defendant Hoover witnessed the assault by Gill, Redinger, and Charles, but never stopped it or reported it.  Plaintiff contends that the assault was motivated by racial discrimination.

- 2 -

Plaintiff immediately requested medical attention for his injuries. Defendant Nurse Haatava allegedly laughed at Plaintiff, saying, "I see you got beat-up pretty bad but you look OK." (Compl., docket #1, Page ID#9.) Plaintiff asked to see a doctor six times, but he was never treated for the assault-related injuries. The following day, while Defendant Nurse Wise was conducting medical rounds, Plaintiff again asked for medical treatment and showed her his head, wrist, stomach and ankle injuries. Wise did not offer treatment. That same date, Plaintiff showed his injuries to Defendant Healthcare Unit Manager Gloria Hill, but she allegedly failed to provide medical treatment. Plaintiff alleges that Defendant CMS was responsible for the actions of the AMF medical providers.

Defendant Hoover filed a major misconduct ticket against Plaintiff on December 1, 2008, the date of the alleged assault. The ticket alleged that Hoover had given Plaintiff a direct order to allow staff to remove his restraints. According to the ticket, Plaintiff responded, "Fuck you bitch get the gas." (Ex B. to Compl., Page ID#30.) Plaintiff contends that Hoover's ticket was issued in retaliation for Plaintiff's exercise of his First and Fourteenth Amendment rights to resist the assault by Defendants Redinger and Charles.

Also on the date of the assault, Defendant Charles issued Plaintiff a major misconduct ticket for assault on staff. Charles alleged that, when he was escorting Plaintiff out of his cell for a routine cell shake down, Plaintiff became disruptive. When Charles attempted to control Plaintiff by a goose neck wrist lock, Plaintiff allegedly jerked away and said, "[F]uck you." (*Id.*, Page ID#33.) Plaintiff alleges that Charles' misconduct ticket, which was corroborated by Gill,[1] was

---

[1] Plaintiff alleges in his complaint that the misconduct was filed by Gill, but his supporting exhibits indicate that Charles issued the ticket, for which Gill gave a supporting statement.

fabricated in retaliation for Plaintiff's exercise of "his First and Fourteenth Amenmdent rights not to destroy his cell, and that the handcuffs were to tight and applied." (Compl., Page ID#12.) Similarly, he alleges that Hoover's ticket was written in retaliation for Plaintiff's "exercising protected conduct against RUO M. Redinger and RUO Charles repeated beating and excessive force and subjecting Plaintiff to cruel and unusual punishment and failure to act." (*Id.*, Page ID#12.)

Defendant Julie Green was the hearing investigator on the misconduct tickets. Plaintiff alleges that Defendant Green viewed the video evidence that incriminated Redinger and Charges, but she participated in the conspiracy by showing deliberate indifference to the use of excessive force. According to the attachments to the complaint, Defendant Green issued three memoranda to the hearings officer, Susan Burke.[2] In the first memo, Green advised the hearings officer that she had taken statements from Plaintiff and his two witnesses, all of which were attached to the memo. In the second memo, Green advised that she had reviewed the relevant three-minute portion of the surveillance videotape, and she listed the actions that occurred at various points in that tape. In the third memo, Green forwarded a copy of the video to the hearing officer, together with a verification that it was a true copy. (Ex. B to Compl., Page ID##27-29.) In his statement to the hearings officer, Plaintiff stated, "All I told him was to tell the red tag not to tear my room up when they shook it down. They told me to shut the fuck up and threw me on the ground. This is all in retaliation for the shower incident."

---

[2]Plaintiff alleges in the body of his complaint that Susan Burke is a Defendant in the action. However, in the initial section of the form complaint provided for the listing of the names, titles and addresses of Defendants, Plaintiff does not list Susan Burke. (*See* Compl., Page ID##2-3.)

Plaintiff contends that Defendant Lieutenant Perry and second-shift Captain Perry[3] condoned the excessive use of force and failed to properly train and supervise their subordinates. Plaintiff also asserts that, on February 24, 2009, Defendant Inspector C. Smith denied his grievance in violation of MDOC policy and failed to report the assault. He alleges that Defendant Tribley participated in the conspiracy when, on February 24, 2009, she issued an untimely response to Plaintiff's Step I grievance, violating MICH. DEP'T OF CORR., Policy Directive 01.04.110, MICH. COMP. LAWS §§ 791.3315 and 791.3310. Plaintiff contends that Defendant Capello violated MDOC policy by not responding to Plaintiff's Step II grievance in a timely fashion and participated in the unlawful conduct by denying Plaintiff's Step II grievance on March 19, 2009. In addition, Plaintiff alleges that Defendant ARUM Mackie acquiesced or condoned the unconstitutional conduct and participated in the conspiracy because he was on duty the day of the incident and had full knowledge that Plaintiff had been assaulted and denied medical care. Plaintiff alleges that Defendant ADW Jondreau failed adequately to train and supervise his subordinates. In addition, Plaintiff alleges that Defendant RUM Marshall failed to act to eliminate the unsafe prison conditions and discrimination and retaliation by his subordinates. Plaintiff alleges that former MDOC Director Patricia Caruso is responsible for failing to train and supervise her employees. Plaintiff also contends that ADW Jeff

---

[3] Plaintiff names "Unknown 2nd Shift Capt. Perry" in his list of Defendants, immediately before "Unknown 2nd Shift Lt. Perry." (Compl., Page ID##2-3.) However, the body of the complaint mentions only one Defendant by the name of Perry, who he describes as a second-shift Lieutenant. Plaintiff does, however, discuss in the body of his complaint an unknown second-shift Captain who allegedly had supervisory liability for the actions of his subordinates. The Court assumes that the unknown second-shift Captain and second-shift Captain Perry are one and the same person and that Plaintiff inadvertently repeated the name "Perry" in his list of Defendants. For the sake of consistency within this opinion and with the docket sheet, the Court will continue to refer to the second-shift Captain as "second-shift Captain Perry."

Larson knew or should have known that Defendant Charles had a history of unconstitutional conduct.[4]

For relief, Plaintiff seeks declaratory and injunctive relief, together with compensatory, punitive and nominal damages.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2));

---

[4]Plaintiff refers to Patricia Caruso and Jeff Larson as Defendants in the body of his complaint. However, in the initial section of the form provided for the listing of the names, titles and addresses of Defendants, Plaintiff does not list Patricia Caruso or Jeff Larson.

*see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.       Conspiracy

Plaintiff alleges that Defendants Gill, Charles, and Redinger conspired to attack him, and Defendants Carpenter and Hoover joined in that conspiracy when they observed the assault but failed to intervene or report the assaulting officers.. He also alleges that Hearing Investigator Green joined the conspiracy when, after observing the videotape, she failed to take corrective action. Further, Plaintiff alleges that Defendants Mackie, Marshall, Tribley, Smith, and Jondreau joined the conspiracy when they took no action to sanction the assaulting officers, despite learning of the injuries to Plaintiff. In addition, Plaintiff alleges that Nurses Haatava and Wise conspired to cover up the attack by denying medical care, and that CMS joined that conspiracy as the supervisory authority that failed adequately to train.

To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a

"plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987);  *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).  A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right.  *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988).  "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996).  A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy.  *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's claims of conspiracy against Defendants Green, Mackie, Marshall, Tribley, Smith, Jondreau, Haatava, Wise, and CMS are wholly conclusory.  Plaintiff makes no allegation against any of these Defendants that demonstrates a link or agreement between them and the assaulting officers.  Conclusory allegations of parallel conduct, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.  Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 129 S. Ct. at 1250.  Plaintiff therefore fails to state a plausible claim of

conspiracy against Defendants Green, Mackie, Marshall, Tribley, Smith, Jondreau, Haatava, Wise, and CMS.

Because the Court concludes that Plaintiff adequately has stated an Eighth Amendment claim against the assaulting officers and observers (Gill, Charles, Redinger, Carpenter and Hoover), it declines to decide at this juncture whether Plaintiff states a conspiracy claim against those individuals.

### B.    Supervisory Liability

Other than his vague conspiracy allegations, Plaintiff fails to make factual allegations against Defendants Lieutenant Perry and the unknown second-shift Lieutenant, second-shift Captain Perry, Inspector C. Smith, ADW Tribley, ADW Jondreau, Warden Capello, ARUM Mackie, RUM Marshall, and CMS, other than his claim that they failed to adequately supervise their subordinates or failed to adequately investigate or respond to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 129 S. Ct. at 1948.  Plaintiff has failed to allege that Defendants Lieutenant

Perry and the unknown second-shift Lieutenant, second-shift Captain Perry, Inspector Smith, ADW

Tribley, Warden Capello, ARUM Mackie, and CMS engaged in any active unconstitutional

behavior.[5]   Accordingly, he fails to state a claim against them.

### C.      Absence of Allegations

Plaintiff names ARUM B. Sweeney as a Defendant in the action.   Defendant

Sweeney, however, is not mentioned in the body of the complaint.  It is a basic pleading essential

that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544

(holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant

fair notice of the claim).  Where a person is named as a defendant without an allegation of specific

conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro*

*se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing

complaint where plaintiff failed to allege how any named defendant was involved in the violation

of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's

claims where complaint did not allege with any degree of specificity which of the named defendants

were personally involved in or responsible for each alleged violation of rights); *Griffin v.*

*Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations

of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722,

---

[5] As the Court previously noted, Plaintiff also claims that Patricia Caruso and Jeff Larson are responsible for failing to adequately supervise or train their subordinates.  Although Caruso and Larson are not listed as Defendants in the appropriate section of the complaint, even had they been properly named, Plaintiff's allegations against them based on their supervisory liability also would fail because Plaintiff has not alleged that they engaged in active unconstitutional behavior.

at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law

as the complaint is totally devoid of allegations as to them which would suggest their involvement

in the events leading to his injuries."). Because Plaintiff's claims fall far short of the minimal

pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim

showing that the pleader is entitled to relief"), his complaint against Defendant Sweeney must be

dismissed.

### D.    Due Process

Plaintiff alleges that the misconduct charges filed by Defendants Charles and Hoover

were false, as were the false statements submitted by Defendants Gill and Redinger to support those

charges. He also complains that Defendant Green, as hearing investigator on the misconduct tickets,

participated in the unconstitutional conduct of the assaulting officers by failing to take action against

them, despite having viewed the videotape of the incident. Plaintiff further alleges that Susan Burke,

as the hearing officer, received the false statements of the officers. Plaintiff implies without actually

stating that Defendant Green inadequately investigated his misconduct charges and that Susan Burke

wrongly found him guilty of those charges.

A prisoner's ability to challenge a prison misconduct conviction depends on whether

the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*,

418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials

must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The

*Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary

proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the

form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[6] for prisoners convicted for crimes occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  481 F.3d at 440.  Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"),

---

[6] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

adopted as judgment of court, Order of Jan. 4, 2011.  Plaintiff therefore has no liberty interest in his

disciplinary credits.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner

may be able to raise a due-process challenge to prison misconduct convictions that result in a

significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not

identified any significant deprivation arising from his convictions.  Unless a prison misconduct

conviction results in an extension of the duration of a prisoner's sentence or some other atypical

hardship, a due-process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).  As a

consequence, Plaintiff fails to state a due process claim against Defendants Charles, Hoover, and

Green, or against Hearing Officer Sarah Burke.

### E.      Remaining Defendants

Upon review, the Court concludes that Plaintiff's remaining allegations against

Defendants Gill, Charles, Redinger, Carpenter, Hoover, Haatava, Wise, and Hill are sufficient to

warrant service of the complaint.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the

Court determines that Defendants Lt. Perry, Captain Perry, C. Smith, Tribley, Jondreau, Capello,

Mackie, Green, Burke, Marshall, Sweeney and CMS will be dismissed for failure to state a claim

pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve

the complaint against Defendants Gill, Charles, Redinger, Carpenter, Hoover, Haatava, Wise, and

Hill.

An Order consistent with this Opinion will be entered.


Dated:        8/9/2011            _____/s/ R. Allan Edgar_____
                                              R. Allan Edgar
                                              United States District Judge